East Stroudsburg Lumber Company, Limited, Appellant, v. Martin Gill, owner or reputed owner, and Joseph H. Newhart, Assignee for the benefit of creditors of J. F. Barteau, Contractor.

*Mechanics' liens—Covenant against liens—Contract—Parol contract.*

It is not essential that a covenant against mechanics' liens should be in writing, but it must be definite and explicit.

Where a written building contract, without any covenant against liens, is executed by the owner under the inducement of an express verbal agreement by the contractor that no liens should be filed, a subcontractor will not be prevented from filing liens, unless he has actual knowledge of the verbal agreement.

Argued March 8, 1898. Appeal, No. 321, Jan. T., 1897, by plaintiff, from judgment of C. P. Monroe Co., Sept. T., 1895, No. 37, on verdict for defendants. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Scire facias sur mechanic's lien. Before ALBRIGHT, P. J., of the 31st judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

Plaintiff's points and the answers thereto were among others as follows:

3. If the jury believe from the evidence that the contract between Gill and Barteau, on October 6, 1894, was that, upon Barteau's agreement to turn over the house unincumbered, Gill waived the bond which he was to have for his security against liens, that contract does not prevent the plaintiff from filing a lien. *Answer:* Merely waiving the bond spoken of by these parties would not deprive Gill of the benefit of an agreement on Barteau's part that there should be no liens; if such an agreement is proved, plaintiff is entitled to a lien unless defendants have proved that it was a part of the agreement between Barteau and Gill that there should be no liens for material or work, and that on the faith of it Gill signed the writing. If such agreement is proved in the way as stated in the general charge, plaintiff has no lien, and the verdict must be for the defendants. The bond was not indispensable to the agreement against liens. The point is negatived.

4. In order to make the plaintiff's lien inoperative against the building the evidence must convince the jury that there was an express covenant by Barteau against liens, or a covenant resulting as a necessary implication from the language employed, and that the implied covenant should have been so clear that the plaintiff could have understood it without consulting a lawyer: Nice v. Walker, 153 Pa. 132. *Answer:* In order to make the plaintiff's lien inoperative against the building the evidence must convince the jury that there was an express agreement by Barteau against liens. The court declines to affirm the point as drawn. The reference to consultation of a lawyer quoted from the opinions of Nice v. Walker, 153 Pa. 132, could not aid and might confuse or mislead the jury. At least it is not a necessary point of instruction in this case, in view of the evidence of the defendants relying upon the alleged

promise that Barteau agreed that no liens should be put upon the property.

5. Under the whole evidence in the case the plaintiff is entitled to a verdict for the value of the materials furnished toward the construction of the defendant Gill's house. *Answer:* Negatived. That matter is referred to the jury.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Henry J. Kotz*, with him *A. R. Brittain*, for appellant, cited McElroy v. Braden, 152 Pa. 81; Brown v. Cowan & Steele, 110 Pa. 593; Nice v. Walker, 153 Pa. 132; Lucas v. O'Brien, 159 Pa. 535; Sullivan v. Hancock, 2 Pa. Superior Ct. 528.

*Charles B. Staples*, with him *Wilton A. Erdman*, for appellees, cited, McElroy v. Braden, 152 Pa. 78; Creswell Iron Works v. O'Brien, 156 Pa. 172; Rynd v. Pittsburg Natatorium, 173 Pa. 237.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The plaintiff filed a lien for material furnished in building a dwelling house on a lot of ground owned by Martin Gill in the borough of Stroudsburg. The contractor was J. F. Barteau, and he purchased the material for the building. The contract. was in writing, as follows:

"EAST STROUDSBURG, Pa., Oct. 6, 1894.

"I hereby agree to build and finish a house for Martin Gill, of East Stroudsburg, Pa., according to plans of "Scientific American" May, and specifications written by for the sum of twenty-eight hundred and eighty-seven dollars. ($2,887.00) except all work connected with the heating, and two sets of folding doors and to have the same ready for occupancy by the first of March, 1895.

  "Witness:               "J. F. BARTEAU,
"F. W. EILENBERGER.         "MARTIN GILL."

Immediately after the execution of this agreement, Barteau proceeded to build the house, which he completed in the spring of 1895. The plaintiff furnished on Barteau's order much of

the lumber, nearly all the doors, sash, shingles, mouldings, brackets and other millwork, to the amount of $936.53, with interest from April 15, 1895. During the progress of the work, Gill paid to him of the contract price, $2,050, leaving still in the owner's hands, $837. Barteau becoming insolvent and unable to pay, the plaintiff filed this lien and issued scire facias thereon. At the trial in the court below, the only questions were two, one of fact for the jury: 1. Was there a parol agreement that no liens should be filed on part of the contractor, which induced the owner to sign the written contract? And one of law for the court; 2. Assuming defendants' evidence was believed by the jury, was the agreement sufficiently certain in law to bar a lien by a subcontractor?

From the testimony of the owner, an architect employed by him had warned him not to sign a contract which did not contain a covenant that no liens should be filed, and he had prepared and was to send to him, the owner, a proper contract and bond, but these, at the date of the contract before us, had not yet been received. When the latter was about to be written, Gill states thus: " Then Mr. Barteau says, 'we will draw up the contract,' and I told him that my bond and contract hadn't arrived, and I didn't want to enter into a contract until my bond and contract arrived, as the lumbermen had so much trouble with the liens. So I was informed by the man who drew up my bond and contract. I said this, 'Mr. Barteau, there is so much trouble with the lumbermen about the liens that I would not like to sign the contract.' He said then, in presence of Eilenberger, 'I will assure you that there will be no liens put upon your property;' then Eilenberger went down stairs. While he was gone, Mr. Barteau and I were talking about these liens, and I hadn't signed the contract at this time. When Mr. Eilenberger came back, I said, 'Fred, do you hear that,' and he says, 'what is it?' Then Mr. Barteau told him what he did to me. He said, 'I will assure you there will be no liens put upon your property. . . .' I told him if that was the agreement, I would drop the bond and the other contract, as he was such an honest man."

The substance of this conversation is testified to by Eilenberger. Barteau's testimony is in these words: " Mr. Gill said that he expected his contract from his architect in Scranton,

but it hadn't come. He says, 'I am going to have you sign the agreement.' I told him that I would sign anything in reason that he wanted me to, and that I never had any liens entered upon against houses, and I didn't expect to have one. He could be certain that there would be none entered up against his house. After some talk Gill said he would not wait for that agreement."

On this evidence, the jury found as a fact that this supplementary parol contract was definite and explicit, and that the owner was induced to execute it by the promise of the contractor that liens would not be filed. Then comes the second question, Did the fact that such agreement in parol as testified to was made render the contract definite and explicit as to third parties ?

We held in McElroy v. Braden et al., 152 Pa. 78, that it was not essential that the covenant against liens should be in writing, but that it must be definite and explicit. In that case the entire contract rested in parol. Any subcontractor or material man who undertook to do the work or furnish materials under it, took the risk of the uncertainty of parol testimony, as to all the terms of the contract. But here, so far as appeared, the principal contractor could exhibit to the material man or subcontractor a complete written contract between himself and the owner, which contained no intimation of a covenant against liens, and, therefore, with a sense of security, he could part with his work or materials; for, in that shape it was a mere trap, not to catch alone the unwary, but the prudent and cautious. Why should he suspect that there was in existence supplementary to the written contract a secret one in parol? It is a rule in law that when parties enter into a written contract the presumption is, that the writing embodies the whole contract. On the words and construction of building contracts, as the statute stood at the date of this one, the owner could protect himself only by exacting from the principal contractor a definite and explicit covenant against liens. If we hold that there may be a written contract containing no covenant at all on the subject, and therefore necessarily definite and explicit, but that there may be still one secret and supplementary thereto, resting in uncertain parol testimony, clearly, there is an end of protection to the subcontractor. That such a supple-

mentary contract does not bar a subcontractor in his lien is in principle decided in Cook v. Murphy, 150 Pa. 41. There, there was a first contract, dated December 13, 1889, which contained no covenant against liens; then a supplementary written contract, dated April 17, 1890, which did contain a provision against them. It was contended that plaintiffs, who were subcontractors for the printing and glazing, could sustain no lien for work done or material furnished after the date of the supplementary agreement. This Court held that it was to be presumed that the subcontractors had knowledge of the first agreement alone; that if the second one could have any effect on their claim, the burden was on the defendant to show notice to them, for they had a right to presume that the first agreement remained unaltered. Here, we hold that the plaintiff must be presumed to have had notice of the written contract, a presumption in favor of the owner; but an exhibition of this contract to it by the principal contractor at once raised the presumption that it was the whole contract. If the owner wished to bar the lien, because of another contract, not even hinted at in the written one, the existence and terms of which could only be ascertained by inquiry of three witnesses, the burden was on him to show that plaintiff had notice of this contract.

The doubtfulness of parol testimony in a case like this is well illustrated. The owner, the one to be protected, after being warned of the importance of a covenant against liens, has a contract prepared with such a covenant; it does not come to hand; another is prepared, written by himself or Barteau, informal, it is true, yet still embodying every essential element of such a contract. A very important one, however, which the owner was especially anxious should be in it, was left out, not through inadvertence or forgetfulness, for before the writing is signed, it is now alleged, it was agreed upon verbally. But besides the improbability of the story, Gill says to the contractor, according to his own testimony: "Mr. Barteau, because you are an honest man, on those grounds, I shall drop the bond and agreement;" that is, the one prepared by the architect, containing a covenant against liens. According to this express statement, it was Barteau's honesty, not his covenant, that induced him to sign. He believed that Barteau would honestly pay his debts for material and not leave him to pay

them. But still further, to show he relied on Barteau's honesty, and not on his covenant, he retained about thirty per cent of the contract price in his own hands, and has it yet. The inconsistencies of the testimony are so prominent as to make the terms of even a parol covenant, to our minds, far from certain. But however this may be, the burden was on defendants to go further and show plaintiff had notice of it at the time it commenced furnishing the material, before the court could say, as matter of law, such a covenant was definite and explicit. The appellant's third assignment of error, the refusal of the court to instruct the jury that, on the whole evidence, the plaintiff was entitled to a verdict, is sustained.

The judgment is reversed, and a v. f. d. n. is awarded.